ACCEPTED
03-15-00144-CR
5556010
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/5/2015 7:45:36 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00144-CR (Count I)

IN THE COURT OF APPEALS FOR THE
THIRD JUDICIAL DISTRICT OF TEXAS, AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/5/2015 7:45:36 AM
JEFFREY D. KYLE
Clerk

## Christopher Arthur Kurtz

Appellant

v.

## The State of Texas

Appellee

On Appeal In Case Number CR2014-343, from the 207th, District Court
of Comal County, the Hon. Jack Robison, Judge Presiding

# Brief on Appeal

Submitted by:

### John G. Jasuta

Attorney at Law
State Bar Card No. 10592300
lawyer1@johnjasuta.com

### David A. Schulman

Attorney at Law
State Bar Card No. 17833400
zdrdavida@davidschulman.com

1801 East 51st Street, Suite 365-474
Austin, Texas 78723
Tel. 512-474-4747
Fax: 512-532-6282

Attorneys for Christopher Arthur Kurtz

**Oral Argument Not Requested**

# Identity of Parties and Counsel

Pursuant to Rule 38.1(a), Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel in the trial court, as well as appellate counsel, so the members of the Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case and so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

## Appellant

Christopher Arthur Kurtz
TDCJ No. 01968855

| Trial Counsel | Appellate Counsel |
| --- | --- |
| **Matt Stolhandske** | **John G. Jasuta** |
| SBN 19278750 | SBN 10592300 |
| **Venessa D. Rodriguez** | **David A. Schulman** |
| SBN 24077794 | SBN 17833400 |
| 1004 S. St. Mary's | 1801 East 51st St, Ste 365-474 |
| San Antonio, Texas 78205 | Austin, Texas 78723 |

## State of Texas

**Jennifer Tharp**
Criminal District Attorney
150 North Seguin, Suite 307
New Braunfels, Texas 78130

| Trial Counsel | **Joshua Presley** |
| --- | --- |
| | SBN 24088254 |
| **Clayten H. 'Clay' Hearrell** | |
| SBN 24059919 | |
| **Chari L. Kelly** | |
| SBN 24057939 | |
| Appellate Counsel | |

# Table of Contents

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . .  i

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Point of Error Restated. . . . . . . . . . . . . . . . . . . . . . . .  6

**The Evidence Is Insufficient
To Prove Aggravated Kidnapping**.

Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument & Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . 15

Certificate of Compliance and Delivery. . . . . . . . . . . . . . . . . 15

# Index of Authorities

**Texas Cases**:

*Grotti v. State*, 273 S.W.3d 273 (Tex.Cr.App. 2008). . . . . . . 12

*Kenny v. State*, 292 S.W.3d 89
    (Tex. App. - Houston [14th] 2007). . . . . . . . . . . . . . . . . . . 10

*Malik v. State*, 953 S.W.2d 234 (Tex.Cr.App. 1997). . . . . . . 12

*Mayer v. State*, 274 S.W.3d 898
    (Tex.App - Amarillo 2008) . . . . . . . . . . . . . . . . . . . . 11, 12

*Prudholm v. State*, 333 S.W.3d 590 (Tex.Cr.App. 2011). . . . . 7

*Rogers v. State*, 550 S.W.2d 78 (Tex.Cr.App. 1977). . . . . . . 10

*Sanders v. State*, 119 S.W.3d 818 (Tex.Cr.App. 2003). . . . . 12

*Steptoe v. State*, 14-10-00131-CR
    (Tex.App - Houston [14th] January 6, 2011). . . . . . . . . . . 11

*Williams v. State*, No. 13-06-00220-CR
    (Tex.App - Corpus Christi, July 5, 2007). . . . . . . . . . . . . 11

**Texas Statutes / Codes**:

Penal Code

    Section 20.01(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

    Section 20.01(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Section 20.02(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Section 20.04(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# Statement of the Case

The following is a brief general statement of the nature of the cause or offense:

> Appellant was charged by indictment with the offense of aggravated kidnapping (Count I), a first degree felony, in Cause No. CR2014-343 in the 207th District Court of Comal County, Texas, and was convicted on that count. Punishment was enhanced by proof of two prior convictions. Appellant was sentenced to confinement for seventy (70) years. Notice of Appeal was timely given.

# Issues Presented

The following is the point upon this appeal is predicated:

**The Evidence Is Insufficient to Prove Aggravated Kidnapping**

No. 03-15-00144-CR (Count I)

IN THE COURT OF APPEALS FOR THE
THIRD JUDICIAL DISTRICT OF TEXAS, AT AUSTIN

**Christopher Arthur Kurtz**
Appellant

v.

**The State of Texas**
Appellee

On Appeal In Case Number CR2014-343, from the 207th, District Court
of Comal County, the Hon. Jack Robison, Judge Presiding

# Brief on Appeal

TO THE HONORABLE THIRD COURT OF APPEALS:

COMES NOW, Christopher Arthur Kurtz, Appellant in the above styled and numbered cause, by and through John G. Jasuta and David A. Schulman, his undersigned attorneys of record, and respectfully files this "Brief on Appeal" as to Count I of the indictment, and would show the Court as follows:

## Statement of Facts

On October 1, 2013, Appellant picked up a friend, Alicia Dawn Sanchez, to take her to her new job, which she was starting

1

that morning (RR Vol. 3, P. 73). Appellant was observed by Detective Bell of the New Braunfels Police Department, who was looking for him to serve an active warrant (RR Vol. 3, P. 106). Andrew Kempker, a New Braunfels Police Department Officer was called by Detective Bell to effect an arrest (RR Vol. 3, P. 15). Kempker followed Appellant, activated his emergency lights and watched as Appellant initially slowed and then accelerated at a high rate of speed (RR Vol. 3, PP. 16-17). Kempker followed him onto IH 35, headed south (RR Vol. 3, P. 18). Other officers were also involved in the pursuit (RR Vol. 3, P. 19). The pursuit involved two people on a motorcycle, a male driver and a female in the rear (RR Vol. 3, P. 19). Kempker knew neither at the time (RR Vol. 3, P. 19). He never lost sight of Appellant during the chase (RR Vol. 3, P. 20). The pursuit was called off by the supervisor on duty, Sergeant Cantu (RR Vol. 3, P. 21). Kempker stated that the pursuit took place in Comal County (RR Vol. 3, P. 23).

Appellant admitted that he knew Kempker was a police officer but stated that he didn't know for sure whether Kempker was

attempting to lawfully arrest or detain him that day (RR Vol. 4, P. 46).

Chad Adams, a New Braunfels Police Department Officer found the motorcycle when called by Schertz PD but he never saw Appellant on it (RR Vol. 3, P. 45). He took custody of Appellant and transported him to the Police Department for interview (RR Vol. 3, P. 47). Officer Michael Rapier of the Schertz Police Department stated that he assisted in the search for Appellant and was on perimeter duty. He saw Appellant and called for him to come out of hiding and, when he didn't surrender, he pulled him out, handcuffed him and took him to waiting New Braunfels Police officers (RR Vol. 3, P. 62). Later, he returned to area and found a gun and keys on top of the gun (RR Vol. 3, P. 63), all in Comal County (RR Vol. 3, P. 64). Appellant admitted to having and attempting to hide the gun but stated that it had been put into his pocket by the passenger, Alicia Dawn Sanchez (RR Vol. 4, PP. 36, 39), who, by telling him she had a gun, and that he should avoid the police, forced his actions (RR Vol. 4, PP. 17-18, 45).

3

Sanchez stated that she was staying with a friend and Appellant lived across the street (RR Vol. 3, P. 72). She was homeless and had just gotten a new job (RR Vol. 3, P. 73). The roommate's car had no gas so Appellant took her to work (RR Vol. 3, PP. 73-74). While they were heading for her work, an officer tried to pull them over (RR Vol. 3, P. 74). Sanchez stated that she did not tell Appellant to run from the police (RR Vol. 3, P. 75). She stated she asked him to pull over by a gas station but he took off, instead (RR Vol. 3, PP. 75, 80-81), after saying, "Fuck it," (RR Vol. 3, PP. 75-76), and announcing, "I am running." She asked him to stop and she asked to get off (RR Vol. 3, PP. 76-77). He didn't stop until after the pursuit ceased, and eventually let her off at the Caterpillar dealer in Schertz (RR Vol. 3, P. 77). She expressed no fear of Appellant but was scared of going to jail (RR Vol. 3, PP. 77-78, 103). She stated that she knew Appellant was not trying "to keep me," (RR Vol. 3, P. 82), that he was just running from the police(RR Vol. 3, P. 83), and that he would let her off the motorcycle (RR Vol. 3, P. 85).

4

Sergeant James Bell of the New Braunfels Police Department testified that the manner and means of use of the motorcycle was such that it was capable of causing death or serious bodily injury (RR Vol. 3, P. 126). He stated that Appellant, by using it in such a manner, made it impossible for Alicia Sanchez to get off of the motorcycle (RR Vol. 3, P. 127). There was no testimony that Sanchez ever attempted to get off of the motorcycle. Bell stated that Appellant transported Sanchez from one place to another (RR Vol. 3, P. 127). Bell stated that he saw a police officer attempt to stop Appellant and he saw Appellant flee from the officer (RR Vol. 3, P. 139). He believed Appellant knew the officer was an police officer (RR Vol. 3, P. 139). Appellant admitted that he was driving the motorcycle that day (RR Vol. 4, P. 63).

## Point of Error Restated

### The Evidence Is Insufficient
### To Prove Aggravated Kidnapping

## Relevant Facts

Alicia Dawn Sanchez stated that she was staying with a friend and that Appellant lived across the street (RR Vol. 3, P. 72). She was homeless and had just gotten a new job (RR Vol. 3, P. 73). Her roommate's car had no gas so Appellant took her to work (RR Vol. 3, PP. 73-74).

While they were heading for her work, an officer tried to pull them over (RR Vol. 3, P. 74). Sanchez stated that she pointed out a gas station in which Appellant could pull over, but that he took off instead, after saying, "Fuck it, I am running" (RR Vol. 3, PP. 75-76, 80-81). She said that she asked him to stop and she asked to get off (RR Vol. 3, PP. 76-77), and he subsequently let her off at the Caterpillar dealer in Schertz (RR Vol. 3, P. 77). Sanchez stated that she knew Appellant was not trying "to keep me" (RR Vol. 3, P.

82), that he was just running from the police (RR Vol. 3, P. 83), and that he had let her off the motorcycle (RR Vol. 3, P. 85).

## Summary of the Argument

The State's evidence was insufficient to show aggravated kidnapping, because there was no evidence of an abduction.

## Argument & Authorities

Sanchez was the named complainant in the aggravated kidnapping case. Sanchez testified that she always knew she was not being taken by Appellant in any way and would be released. It is clear from her testimony that Appellant did not abduct Sanchez.

Appellant asserts that kidnapping requires an abductive event and an intent to exploit that abduction.[1] There was neither in the instant case.

---

[1] Aggravated kidnapping requires "abduction," i.e., an "unlawful restraint" -- a substantial interference with the person's liberty, by moving the person from one place to another or by confining the person -- committed with the specific intent to prevent the victim's liberation by secreting or holding him in a place where he is not likely to be found or using or threatening to use deadly force. **Prudholm v. State**, 333 S.W.3d 590, 599-600 (Tex.Cr.App. 2011).

7

The aggravated kidnapping statute under which Appellant was convicted, Penal Code § 20.04(b) states:

> (b) A person commits an offense if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense.

Penal Code § 20.01(2) defines "abduct" as:

> (2) "Abduct" means to restrain a person with intent to prevent his liberation by:
>
> > (A) secreting or holding him in a place where he is not likely to be found; or
> >
> > (B) using or threatening to use deadly force.

Pursuant to Penal Code § 20.01(1), "restrain" also has a specific, statutory, meaning:

> (1) "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. Restraint is "without consent" if it is accomplished by:
>
> > (A) force, intimidation, or deception

As set out in Penal Code § 20.02(a):

> A person commits an offense if he intentionally or knowingly restrains another person.

While the Complainant testified that she did not tell Appellant to run, and that she asked him to pull over but he intentionally sped off, she also testified that he did stop and let her off after the

8

pursuit had been called off. She stated she knew that she would be able to get off eventually, that he would not keep her and that she knew that he was just running from the police (RR Vol. 3, P. 83).

It is obvious from the record that there was no use or threatened use of deadly force directed toward Sanchez to compel her obedience to a threat. At most, Appellant's actions constituted a placing of a once willing rider into a dangerous situation.

The actions in this case are nothing more than that posed by a passenger who asks to be let off at a specific spot only to be told that she will be let out at a different spot for whatever reason, and then is kept in the car traveling at a speed which makes it dangerous to jump out, and then is let out at that different location. There is no abductive event in that case and there is none here. Succinctly, in the case at bar, Appellant did not "abduct" Sanchez, for several reasons, though he may well have "restrained" her.

9

Sanchez did not testify that she feared Appellant but, only testified that she feared arrest. In fact, she stated that she knew she was not the object of his actions, but that he was, rather, only running from the police (RR Vol. 3, P. 83). She knew throughout that Appellant did not wish to prevent her liberation and that she would be released. Sanchez's testimony regarding Appellant's actions toward the Complainant, and Appellant's testimony, constitutes the only evidence as to his intent.

Under Penal Code § 20.01(2)(B), "abduct," as alleged in this case, means to restrain a person with the intent to prevent liberation by using or threatening deadly force. Under Penal Code § 20.01(1), "restrain" means to restrict a person's movement without consent so as to interfere substantially with his or her liberty by moving him or her from one place to another. Threats may be communicated by actions, words, or deeds, including acts amounting to an offer to use future force. *Rogers v. State*, 550 S.W.2d 78, 81 (Tex.Cr.App. 1977); *Kenny v. State*, 292 S.W.3d 89, 98 (Tex. App. - Houston [14th] 2007).

10

> The greatest difference between unlawful restraint and aggravated kidnapping is whether the victim was "abducted": restrained with the intent to prevent the victim's liberation by secreting or holding her in a place not likely to be found, or using or threatening to use deadly force.

*Williams v. State*, No. 13-06-220-CR (Tex.App - Corpus Christi, July 5, 2007)(not designated for publication).

In this case there was no deadly force used toward the victim in an effort to prevent her liberation nor was there any threat to the victim to use deadly force should Sanchez seek liberation. Sanchez made no attempt to leave Appellant's company only to be forcibly returned as the victim did in *Steptoe v. State*, 14-10-00131-CR (Tex.App - Houston [14th] January 6, 2011)(not designated for publication). All the evidence in this case showed was the reckless exposure of the victim to a substantial risk of serious bodily injury. Appellant was, therefore, guilty of unlawful restraint, at most.

The instant case is similar to, but distinguishable from, *Mayer v. State*, 274 S.W.3d 898 (Tex.App - Amarillo 2008), in which the defendant argued that his intent was not to hold the victim in a place where she is not likely to be found, but rather, that his intent was to flee from the convenience store to avoid

11

capture for his assault on the victim.  The Court of Appeals reasoned:

> this does not negate his intent to abduct. Even by appellant's own argument that he sought to flee from the store to avoid capture, he was doing so by attempting to reach a location where he could not be found. However, in his attempt to avoid capture, all the evidence at trial showed that appellant forced Tammy to go with him. Therefore, by seeking a location where he could not be found and by forcing Tammy to go with him, he was taking Tammy to a location where it was likely that she would not be found.

*Mayer*, 274 S.W.3d at 901.  In the case at bar there is no showing that Appellant used any force to compel Sanchez to go with him, and certainly no force directed at her.  She never felt compelled in any manner.

The evidence is viewed in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of aggravated kidnapping beyond a reasonable doubt.  *Sanders v. State*, 119 S.W.3d 818, 820 (Tex.Cr.App. 2003).  Legal sufficiency is measured by the elements of the offense as defined by a hypothetically-correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Cr.App. 1997); see also *Grotti v. State*, 273 S.W.3d 273, 280 (Tex.Cr.App. 2008).  From this perspective it is plain that there was no evidence of abduction.

12

Not only did Sanchez not seek "liberation," no one was seeking to "liberate" her. There was no thought in anyone's mind that Sanchez was anything but a willing rider brought into the situation only by Bell's call for the arrest of Appellant while Sanchez was on the back of Appellant's motorcycle. There was no intimation that Appellant gave Sanchez a ride to work that morning so he could take her and hold her against her will, or that he ever had the desire to do anything to or with her but deposit her somewhere after he had completed his flight from the police.

Under Penal Code § 20.04(b), and a hypothetically-correct charge in this case, the jury was required to find, beyond a reasonable doubt, that Appellant "intentionally or knowingly abduct[ed] another person and use[d] or exhibit[ed] a deadly weapon during the commission of the offense." There was absolutely no evidence that Appellant abducted Sanchez, because he did not use any force directed to Sanchez, or anyone else, in an effort to prevent her liberation which was never sought, nor was he ever shown to have intended to prevent Sanchez's liberation.

13

## Conclusion

The evidence is insufficient to support the jury's verdict as to Count I of the indictment, alleging aggravated kidnapping. Appellant is entitled to an acquittal as to that Count.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Christopher Arthur Kurtz, Appellant in the above styled and numbered cause respectfully prays that this Honorable Court will review this brief, and, upon submission of the case to the Court, will vacate the Judgment of the court below as to the Aggravated Kidnapping and will order an acquittal.

Respectfully Submitted:

_____      _____

**John G. Jasuta**             **David A. Schulman**
Attorney at Law             Attorney at Law
State Bar Card No. 10592300    State Bar Card No. 17833400
lawyer1@johnjasuta.com       zdrdavida@davidschulman.com

1801 East 51st Street, Suite 365-474
Austin, Texas 78723
Tel. 512-474-4747
Fax: 512-532-6282

Attorneys for Benny Cavazos Valverde

14

## Statement Regarding Oral Argument

Oral Argument is Not Requested.

## Certificate of Compliance and Delivery

This is to certify that: (1) this document, created using WordPerfect™ X7 software, contains 2,653 words, excluding those items permitted by Rule 9.4 (i)(1), Tex.R.App.Pro., and complies with Rules 9.4 (i)(2)(B) and 9.4 (i)(3), Tex.R.App.Pro.; and (2) on June 5, 2015, a true and correct copy of the above and foregoing "Brief on Appeal" was transmitted via the eService function on the State's eFiling portal, to Joshua Presley (preslj@co.comal.tx.us), counsel of record for the State of Texas.

_____

**John G. Jasuta**